# IN THE UNITED STATES DISTRICT COURT
# OF THE EASTERN DISTRICT OF TEXAS
# TEXARKANA DIVISION

| | | |
|---|---|---|
| ALFREDO MORINA AND TEUTE MORINA § § § | | |
| **Plaintiffs** § § | | |
| V. § | No. 5:10CV125 | |
| § | | |
| JOHNSON CONTROLS, INC. § | | |
| **Defendant** § | | |

### Memorandum Order Adopting the Report of the Magistrate Judge

The above-entitled and numbered civil action was heretofore referred to United States Magistrate Judge Caroline M. Craven pursuant to 28 U.S.C. § 636. The Report of the Magistrate Judge which contains her proposed findings of fact and recommendations for the disposition of such action has been presented for consideration. Johnson Controls, Inc. ("Defendant" or "JCI") filed objections to the Report and Recommendation. Alfredo Morina and Teute Morina ("Plaintiffs") filed a response to Defendant's objections. The Court conducted a *de novo* review of the Magistrate Judge's findings and conclusions.

Defendant objects to the Magistrate Judge's recommendation that Defendant's motion for summary judgment on Plaintiffs' design defect claim be denied. Specifically, Defendant asserts, as a component part supplier, it cannot be held liable for seat and vehicle performance decisions that were made by Ford Motor Company ("Ford"). Defendant relies on *Bostrom Seating, Inc. v. Crane Carrier Co.*, 140 S.W.3d 681, 683 (Tex. 2004), asserting the general rule in Texas is that a component part supplier is not liable for defects in the final product if the component was built in

accordance with the plans and specifications of a customer. According to Defendant, it is undisputed that Defendant's seat complied with Ford's specifications. Defendant stresses it did not participate in integrating the component seat into the Ford Expedition itself.

In *Bostrom*, the Texas Supreme Court considered whether the evidence presented during trial demonstrated that the seat supplied by Bostrom to Crane was itself defective. *Bostrom,* 140 S.W.3d at 684. The court of appeals had held there was conflicting testimony regarding the alleged defectiveness of the design of the garbage truck and of its component parts. Specifically, the court of appeals focused on testimony from the plaintiff's expert "who was critical of the Bostrom seat because it failed to keep height retention in a crash sequence, did not have an armrest or headrest and did not have a contoured seat." *Id*.

The Texas Supreme Court noted the "testimony" relied upon by the court of appeals had actually been read by Crane's attorney from a deposition the plaintiff's expert had given prior to trial and that the comments were read out of context. *Id*. Subsequent to Crane's questioning of the plaintiff's expert, Bostrom's counsel asked the expert whether the seat was defectively designed or whether it was defective in terms of the application within the Crane vehicle. *Id*. The expert clarified that "this seat, in some other environment, may function and work perfectly safe, but in this environment it can't. . . ." *Id.* The Texas Supreme Court also noted that at trial, the expert repeatedly testified that the seat itself was not defective. *Id.* Not only did Crane design the garbage truck and choose the seat it would use, but also none of the evidence cited by Crane could be used to prove that the Bostrom seat was in and of itself defective. *Id.* "Even Crane's own attorney, in his opening statement, admitted that 'there isn't anything wrong with the seat.'" *Id*. The court concluded as follows:

> At best, the evidence supports a possible conclusion that using the seat in this specific truck created an allegedly defective restraint system design. Crane was in total control of the design of that system, and Bostrom, playing no part in the design of the truck, cannot be held liable for its possible defectiveness.

*Id.* at 684-85.

As noted in *Bostrom,* a component part which is not itself defective and is appropriate for certain other applications does not become "defective" simply because it was used in an inappropriate application. *Id.* at 683–84 (component seat which was not itself defective, and which "in another application, not the one on this vehicle, could work and perform under many conditions well," was not defective as integrated into vehicle restraint system where manufacturer had no control over design of restraint system). Likewise, in *Bennett v. Span Industries, Inc.*, 628 S.W.2d 470 (Tex. App. – Texarkana 1981, reh'd denied), the court noted there was no "summary judgment evidence tending to show that Span introduced into commerce a defectively designed or manufactured product." *Id*. at 472. According to the court of appeals, Span did not design or manufacture an integrated roof containing defectively designed or dangerous openings; it simply manufactured and sold concrete sections which were then installed according to the design specified by the owner. *Id*. The court specifically noted, however, that had "one of the sections been defectively designed or manufactured so that it gave way with Mr. Bennett or otherwise caused him to fall, a legitimate claim of products liability might be made." *Id*.

Here, the Court agrees with the Magistrate Judge that the evidence, when viewed in the light most favorable to Plaintiffs, creates a fact issue as to whether the JCI seat was itself defective. According to Mr. Syson, Plaintiffs' expert, the JCI seat was itself defective because, among other things, the inboard backrest attachment separated during the initial side impact. (Syson Report at

3

pgs. 6-7)(Syson Depo. at 102:4-20). Mr. Syson's opinions, when viewed in the light most favorable to Plaintiffs, provide some evidence that the JCI seat, in and of itself, was defective. In addition to the opinions provided in his affidavit and report, Mr. Syson confirmed in his deposition that it is his opinion that the "backrest, meaning specifically the hinge pin, separated in the initial side impact." *Id.* at 102:4-20. Mr. Syson further testified that the inboard pivot is not intended to separate during a crash. *Id*. at 18:6-14.

As further noted by the Magistrate Judge, Mr. Roger Burnett, a Ford Motor Company engineer, testified that Ford did not tell, instruct, or require JCI to use a seatback pivot design for the 1997-2002 Ford Expedition. (Burnett Depo. at 155:25-156:5). According to Mr. Burnett, JCI exclusively determined they needed to use a seatback hinge pivot pin for the 2002 Ford Expedition. *Id*. at 156:6-13. Mr. Burnett stated Ford provided JCI, as a component part supplier, with a "set of performance specifications" and expected the supplier's "designs to meet the performance specifications." *Id*. at 156:18-157:3. According to Mr. Burnett, Ford expects the seat to be designed to meet Ford's performance specifications so that the seat "will provide proper restraint throughout an accident." *Id.* at 157:9-23.

Mr. Burnett stated that Ford expects that its seat restraint system will not separate in an accident that is consistent with the forces that are seen in the various test parameters set forth in the design specifications, but he also indicated there is no requirement that the structure of the seats must stay intact in every field scenario. Mr. Burnett stated it is possible for people to get seriously injured or killed if a vehicle seat does not perform properly in an accident, and a separated hinge pivot pin could be a factor in such people getting seriously injured or killed. *Id.* at 159:12-23. According to Mr. Burnett, the seatback hinge pivot pin in the Morina Ford Expedition separated. *Id*. at 160:25-

4

161:8.

Mr. Burnett further testified that Ford required JCI to perform the necessary engineering analysis that is needed to make certain that the seats are going to provide adequate occupant protection. *Id*. at 165:4-13. According to Mr. Burnett, engineering analysis includes things such as design failure affects; analysis failure mode affects analysis; fault free analysis; and risk hazard analysis. *Id*. at 165:15-166:1. Mr. Burnett testified that Ford has not located any such documents from JCI. *Id*. at 166:3-17.

Mr. Burnett stated JCI was responsible for its portion of the design and testing of the seat pivot hinge pin. *Id*. at 167:3-19. Ford has no testing in its record from JCI related solely to evaluating the seat pivot hinge pin. *Id.* at 167:20-168:2. Mr. Burnett did not believe JCI furnished computerized simulations regarding the 1997-2002 Ford Expedition as it relates to far side impacts, and Mr. Burnett had no record of JCI testing to see if a shearing load could cause the seatback hinge pivot pin to separate on the 1997-2002 Ford Expedition. *Id* at 168:23-170:23.

Although the issue is a close one, having viewed the evidence in the light most favorable to Plaintiffs, the Court agrees with the Magistrate Judge that Defendant's motion for summary judgment regarding Plaintiffs' design defect claim should be denied. Defendant's objections are without merit. The Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct. Therefore, the Court hereby adopts the Report of the United States Magistrate Judge as the findings and conclusions of this Court.

Accordingly, it is hereby

**ORDERED** that Defendant Johnson Controls' Motion for Summary Judgment (Dkt. No. 32) is **GRANTED IN PART and DENIED IN PART**. It is further

**ORDERED** that Plaintiffs' manufacturing defect claim is **DISMISSED WITH PREJUDICE.**

It is SO ORDERED.

SIGNED this 31st day of May, 2012.

_____
MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE